UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE MARVASO, et al.,

      Plaintiffs,

                                  Civil Case No. 18-12193
v.                                  Honorable Linda V. Parker

RICHARD SANCHEZ,

      Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

This civil rights actions, filed pursuant to 42 U.S.C. § 1983, arises from a May 8, 2013 fire at a restaurant and pool hall in Westland, Michigan, and the subsequent investigation of the fire by Defendant Richard Sanchez, a Michigan State Police Department employee ("Lieutenant Sanchez").[1]  In their Complaint, filed July 13, 2018, Plaintiffs assert that Lieutenant Sanchez made material misstatements and omissions in an affidavit he submitted in support of search

---

[1] Plaintiffs allege in their Complaint that Defendant is a detective-sergeant, and Defendant identified himself as such in the affidavit he submitted in support of the search warrant that is at the heart of this case.  (Compl. ¶ 8.)  Defendant is referred to as a lieutenant in the pending motion to dismiss.  (ECF No. 7.)  The Court will use the latter title to refer to Defendant throughout this Opinion and Order, as it presumes that he currently holds that position.

warrants for their homes. Plaintiffs claim that this violated their Fourth
Amendment rights.

The matter is presently before the Court on Lieutenant Sanchez's motion to
dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative,
for summary judgment under Rule 56. (ECF No. 7.) The motion has been fully
briefed. (ECF Nos. 13, 17.) Finding the facts and legal issues sufficiently
presented in the parties' briefs, the Court is dispensing with oral argument pursuant
to Eastern District of Michigan Local Rule 7.1(f). For the following reasons, the
Court is denying Lieutenant Sanchez's motion.

## I.    Applicable Standard of Review

As indicated, Lieutenant Sanchez seeks dismissal of Plaintiffs' claim against
him pursuant to Rule 12(b)(6) or, alternatively, Rule 56. Lieutenant Sanchez
attaches matters outside the Complaint to his motion, including an affidavit he
made in support of the motion, his affidavit in support of the search warrants, and
the search warrants. Plaintiffs argue in response that Defendant's request for
summary judgment is premature as no discovery has been taken. In fact, the Court
has yet to conduct an initial scheduling conference in this case and no scheduling
order has been entered. Plaintiff's counsel has submitted an affidavit in
compliance with Rule 56(d) detailing the evidence he expects to uncover during
discovery, which he believes is needed to properly respond to a Rule 56 motion.

Motions for summary judgment filed before the close of discovery are often denied as premature in this Circuit. *CLT Logistics v. River West Brands*, 777 F. Supp. 2d 1052, 1076 (E.D. Mich. 2011) (quoting *Wells v. Corporate Accounts Receivable*, 683 F. Supp. 2d 600, 602 (W.D. Mich. 2010)). The Sixth Circuit Court of Appeals has found that summary judgment motions, as a matter of discretion, may be found premature where discovery has not commenced. *McKinley v. City of Mansfield*, 404 F.3d 418, 443 (6th Cir. 2005) (holding that summary judgment was premature and "the district court abused its discretion because at the time of its highly restrictive discovery order, *no* discovery had occurred and the court offered no explanation for limiting discovery"); *Vance By & Through Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1995) (reversing summary judgment because "no discovery was conducted before the motion for summary judgment was filed and decided"). This Court finds Lieutenant Sanchez's request for summary judgment to be premature, as well, and therefore is reviewing Plaintiffs' § 1983 claim against him solely under Rule 12(b)(6)'s standard.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). As Plaintiffs' claim against Lieutenant Sanchez is premised on the affidavit he submitted in support of the search warrants for their homes, the Court concludes that it is proper to consider those documents in reviewing the pending motion.

## II.    Factual Background

The following facts are derived from Plaintiffs' Complaint, except where noted.

On May 8, 2013, shortly before 8:15 a.m., a fire broke out in the kitchen of Marvaso's Italian Grille ("Marvaso's"), a restaurant located on Wayne Road in

Westland, Michigan.  Plaintiffs George and Mary Marvaso leased and operated Marvaso's, as well as an adjacent pool hall and charity poker facility called Electric Stick.  No one was inside Marvaso's or Electric Stick when the fire broke out.  Wayne-Westland Fire Department Firefighter Brian Woehlke died from smoke and soot inhalation while fighting the fire.

Officials from the Wayne-Westland Fire Department initially investigated the fire, refusing the Michigan State Police Department's offer to conduct the fire origin and cause investigation.  Wayne-Westland Fire Marshal John Adams conducted an on-scene investigation which revealed no accelerants.  Investigators who investigated the fire for the insurance companies that insured the buildings' landlord and the tenant businesses classified the cause of the fire as "undetermined."

Between May 8, 2013 and June 30, 2013, the Michigan Occupational Safety and Health Administration ("MIOSHA") investigated Woelke's death, conducting its "closing conference" with Wayne-Westland Fire Department officials on the latter date.  At that time, MIOSHA indicated that it would be issuing citations to the fire department for safety violations resulting in Woelke's death.  On August 30, 2013, MIOSHA issued a citation to the City of Westland for a "serious" violation of health and safety regulations.  The City subsequently acknowledged the citation and agreed to pay the $3,500 penalty assessed against it.

In mid-November 2013, Wayne-Westland Fire Marshal Adams announced that the fire had an incendiary cause and that the Michigan State Police would be opening a homicide investigation into Woelke's death. On December 12, 2013, Lieutenant Sanchez swore out an affidavit in support of search warrants for, among other places, Plaintiffs' homes. In the affidavit he submitted in support of the search warrants, Lieutenant Sanchez indicated, among other things, the following:

> (7) Almost immediately after the reported fire was extinguished, Westland Police began receiving tips that the fire was suspicious and most likely an arson fire. One of the tips indicated that on the evening of May 8, 2013, a bar patron named Andrew Baldoni was at the bar at Super Bowl 45100 Ford Road, Canton and reportedly told people at the bar about information he had about the cause of the fire. He stated that people would be shocked if they knew the truth about the fire and went on to state that, Geo, the son of the bar's owner and other persons had placed leftover construction materials in the ceiling of the building and started the fire earlier in the morning. In an interview with police, Baldoni denied having actual knowledge of who started the fire and stated he had only repeated what other people were talking about. In addition, witness Sean Quigley, reported to police that he observed two vehicles in the parking lot a couple hours prior to the fire (after closing), described as a light gray/white Dodge and dark mid-sized sedan. Fire Marshall John Adams stated that he had observed the son of George Marvaso, (Geo), George Marvaso Jr. driving a car that matched this description on occasions prior to the fire. A third witness, Robert Mulka, told sheriff's deputies that he believed the fire was started by Geo Marvaso and knew the fire started in the ceiling and got out of control. He stated that he (Mulka) is a relative of the Marvaso's and knew that Marvaso, Sr. was distraught over the fire because it was supposed to be an insurance

job and no one was supposed to get hurt.

…

(10)  On October 29, 2013 Fire Marshall Adams made contact with Detective Sergeant Ponzetti and provided her with a copy of his Wayne Westland Fire Authority fire report incident #13-04931WL.  In his cause and origin report, Fire Marshall Adams described finding two points of fire origin in the building, one being in the Electric Stick near the office and the second one being identified in the kitchen area of Marvaso's.  Fire Marshall Adams stated that the Electric Stick fire originated in the ceiling area of the location.  He also indicated that he observed evidence of a separate and distinct area of origin in the kitchen of Marvasos [sic]. He concluded and opined that the fire was incendiary in nature and resulted from an "open flame" applied by human hands to combustibles to start this fire. …

(11)  Fire Marshall Adams determined that the doors to the Electric Stick and Marvaso's were locked and secured at the time of the fire and were breached by the Wayne Westland Fire Authority fireman [sic], indicating that someone with a key had entered the establishment to ignite the fires.

(12)  George Marvaso, owner of Marvaso's Italian Grille and Electric Stick, advised affiant that he has been in bankruptcy since 2007 and is currently making monthly payments to satisfy his long term debt.  Further investigation revealed that Marvaso was experiencing a long history of financial difficulties at the time of the fire and owed back property and business taxes to the City of Westland.  Moreover, Marvaso told police investigators that he had increased the coverage of his insurance policy covering the contents of the structure three to four months prior to the fire from $400,000 to $600,000.

(*See, e.g.*, Def.'s Mot. Ex. 1A, ECF No. 7-1 at Pg ID 53-54.)  A judge in Michigan's 33rd District Court signed the search warrants on the same date as Lieutenant Sanchez's affidavit.  (*Id*. Exs. 1A-F, ECF No. 7-1.)

As of the date Plaintiffs filed this lawsuit, no arrests had been made in connection with the fire.

## III.  Defendant's Argument for Dismissal

Lieutenant Sanchez makes one argument in support of his motion to dismiss. Specifically, he claims that because a judicial officer issued the search warrants, he is entitled to qualified immunity.  (Def.'s Br. in Supp. of Mot. at 8-9, citing *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012).)  As the Supreme Court stated in *Messerschmidt*: "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'"  565 U.S. at 547 (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)).

In his motion, Lieutenant Sanchez recognizes one exception to the good faith rule—that is, when the affidavit was so lacking in probable cause as to render the officer's reliance upon it unreasonable.  (Def.'s Br. in Supp. of Mot. at 10, quoting *Messerschmidt*, 565 U.S. at 547.)  Yet, Lieutenant Sanchez argues "that the threshold for establishing this exception is a high one" and that Plaintiffs

cannot satisfy it here. (*Id*. at 10-12.) Lieutenant Sanchez maintains that he "had more than adequate facts" to establish probable cause to support the search warrants. (*Id*. at 12.) "In short," Lieutenant Sanchez asserts, "this is not the rare case where it would have been obvious to [him] that the search warrant affidavits were 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" (*Id*. at 12-13, quoting *Leon*, 468 U.S. at 923).

## IV.  Analysis

Qualified immunity shields government officials acting within the scope of their official duties from civil liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). A two-step inquiry is used to decide whether an officer is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). First, taken in the light most favorable to the plaintiff, the court must decide whether the facts alleged show that the officer's conduct violated a constitutional right. *Id*. at 201. Second, if the facts do show the violation of a constitutional right, the court must determine whether the right was clearly established. *Id*.

Plaintiffs allege that Lieutenant Sanchez violated their Fourth Amendment rights by procuring search warrants through an affidavit that made material false

statements or omitted material facts. [2]  The Fourth Amendment requires that

warrants be issued only upon a showing of probable cause.  *Greene v. Reeves*, 80

F.3d 1101, 1105 (6th Cir. 1996).  As Lieutenant Sanchez correctly argues in

support of his motion to dismiss, officers are entitled to rely on a judicially-secured

warrant as satisfactory evidence of probable cause.  *Yancey v. Carroll Cty.*, 876

F.2d 1238, 1243 (6th Cir. 1989).  What Lieutenant Sanchez fails to address in his

motion however, and what the essence of Plaintiffs' claim is against him, is that

"an officer cannot rely on a judicial determination of probable cause if that officer

knowingly makes false statements and omissions to the judge such that but for

these falsities the judge would not have issued the warrant."  *Id.*; *see also Ahlers v.

Schebil*, 188 F.3d 365, 373 (6th Cir. 1999); *Hill v. McIntyre*, 884 F.2d 271, 275

(6th Cir. 1989).  Stated differently, "'police officers cannot, in good faith, rely on a

judicial determination of probable cause when that determination was premised on

---

[2] In their Complaint, Plaintiffs allege that Lieutenant Sanchez made false statements in his affidavit in support of the search warrants and that without those statements the affidavit failed to establish probable cause for the search.  (*See, e.g.*, Compl. ¶¶ 43, 44.)  Plaintiffs do not identify the specific misstatements or omissions at issue in their Complaint.  Nevertheless, Lieutenant Sanchez has not moved for dismissal arguing that the Complaint is deficient for that reason.  In other words, Lieutenant Sanchez has not contended that Plaintiffs' Complaint provides only "a formulaic recitation of the elements of [their] cause of action" without "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.  Plaintiffs identify the false statements and omissions in response to Lieutenant Sanchez's motion, thereby giving him fair notice of the nature of their claim and demonstrating that they could amend their pleading to plausibly state their claim had this been the basis on which he sought dismissal.

an officer's own material misrepresentations to the court.'" *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006)) (additional citations omitted).  This law was clearly established when Lieutenant Sanchez swore out the search warrants at issue in this case.  *Gregory*, 444 F.3d at 758 (finding clearly established law violated when an officer makes material omissions that are "deliberate … or show[] reckless disregard for the truth").

An officer may be liable under § 1983 for making material false statements or omitting material information knowingly or in reckless disregard of the truth to establish probable cause for a warrant.  *Ahlers*, 188 F.3d at 373.  A plaintiff asserting such a § 1983 claim must show that the defendant stated a deliberate falsehood or made an omission knowingly or in reckless disregard for the truth and that the false or omitted information was material to the finding of probable cause.[3] *Hill*, 884 F.2d at 275.  In his motion to dismiss, Lieutenant Sanchez contends that

---

[3] The Sixth Circuit has stated that a plaintiff must make a "substantial showing" that the defendant stated a deliberate falsehood or acted in reckless disregard of the truth.  *See Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).  The Sixth Circuit subsequently made clear, however, that this is not a proper standard when evaluating a motion to dismiss.  *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (finding that the district court made "a critical threshold error" in evaluating the plaintiff's claim on a motion to dismiss by applying a "'substantial' pleading burden" which is "plainly inappropriate in light of *Iqbal* and *Twombly* …."  Instead, the plaintiff need only "plausibly allege" that the warrant was unsupported by probable cause.  *Id*. at 429 (citation omitted).

there was probable cause supporting the search warrants; however, he does not address the impact of his alleged false statements and omissions on the finding of probable cause. The Court therefore cannot conclude that he is entitled to qualified immunity.

Moreover, the Sixth Circuit has held that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley*, 779 F.3d at 433; *see also Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019); *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). As the Sixth Circuit explained in *Wesley*:

> Although an officer's "entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point," *Vakilian*, 335 F.3d at 516 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)), that point is usually summary judgment and not dismissal under Rule 12. *See Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (observing that the fact-intensive nature of the applicable tests make it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*" (emphasis in original)); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."); *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) ("Qualified immunity is typically addressed at the summary judgment stage of the case."); Grose v. Caruso, 284 Fed. Appx. 279, 283 (6th Cir. 2008) ("The standard for a 12(b)(6) motion is whether the allegations, if taken as true, could state a claim upon which relief may be granted, [and] dismissal of

> Appellants on the basis of qualified immunity is
> premature.")

779 F.3d at 433-34 (brackets omitted).  It would be particularly inappropriate for

the Court to grant Lieutenant Sanchez's Rule 12(b)(6) motion to dismiss on

qualified immunity grounds where his arguments in support of dismissal are not

directed at the false statements and omissions on the finding of probable cause

alleged by Plaintiffs.

Accordingly,

**IT IS ORDERED** that Defendant Richard Sanchez's Motion to dismiss or

in the alternative for Summary Judgment (ECF No. 7) is **DENIED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 10, 2019