UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE MARVASO, *et al.*,

        Plaintiffs,

                                    Civil Case No. 18-12193

v.                                    Honorable Linda V. Parker

RICHARD SANCHEZ, *et al.*,

        Defendants.

_____/

## OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART JOHN ADAMS AND MICHAEL J. REDDY JR'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]; (2) GRANTING RICHARD SANCHEZ'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 49]; AND (3) GRANTING MICHAEL J. REDDY SR.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]

This is a consolidated civil rights action filed pursuant to 42. U.S.C. § 1983, arising from a May 8, 2013 fire at a restaurant and pool hall located in Westland, Michigan.  In the original complaint filed July 13, 2018, business owners George Marvaso and Mary Marvaso, along with their son and daughter, who were also employees, George F. Marvaso and Sunday Gains allege that Defendant Richard Sanchez, a Lieutenant with the Michigan State Police Department, violated their Fourth Amendment Rights by conducting an unreasonable search of Plaintiffs' homes and the seizure of records and property.  *See* Case No. 18-12193.   In a subsequent lawsuit, Plaintiffs George Marvaso, Mary Marvaso, and George F.

Marvaso (collectively, "Plaintiffs") filed a Second Amended Complaint alleging that Wayne-Westland Fire Department employees John Adams and Michael J. Reddy, Jr., and retired Fire Chief, Michael J. Reddy, Sr., engaged in a conspiracy to violate Plaintiffs' Fourth and Fourteenth Amendment rights by allegedly falsifying a report related to the fire.

The matters presently before the Court are on Defendants John Adams' and Michael J. Reddy, Jr.'s motion for summary judgment (ECF No. 48), Defendant Richard Sanchez's motion for summary judgment, (ECF No. 49), and Defendant Michael J. Reddy Sr.'s motion for summary judgment (ECF No. 50).  The motions are fully briefed.  (ECF Nos. 52, 56, 59, 60, 61.)  Finding the facts and legal arguments sufficiently presented by the parties, the Court is dispensing with oral argument with respect to the parties' motions pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court is granting in part and denying in part John Adams and Michael J. Reddy, Jr.'s motion, granting Richard Sanchez's motion, and granting Michael J. Reddy Sr.'s motion.

## I.    STATEMENT OF FACTS

On May 8, 2013, at approximately 8:16AM, a fire occurred in the kitchen of Marvaso's Italian Grille restaurant in Westland, Michigan, which was leased and operated by Plaintiffs.  Shortly after, the fire began to spread to the adjacent business, Electric Stick pool hall, which was also leased and operated by Plaintiffs.

At approximately 8:16AM, an unidentified individual called 911 to report the fire. After the fire trucks arrived, Sunday Gains also arrived and confirmed that no one was in the restaurant or pool hall at that time.

At approximately 8:23AM, firefighter Brian Woelke and two other firefighters went into the building to locate the fire. Because the building was about to collapse, the firefighters received a call to evacuate. However, Mr. Woelke did not make it out of the building and was later found dead near the rear entrance of the building. According to the autopsy report, he died of smoke inhalation after his self-contained breathing apparatus ("SCBA") ran out of air.

Officials from the Wayne-Westland Fire Department initially investigated the fire, refusing the Michigan State Police Department's offer to conduct the fire origin and cause investigation. The Wayne-Westland Fire Marshal, Plaintiff John Adams ("Fire Marshal Adams"), conducted an on-scene investigation, which revealed no accelerants. Investigators who investigated the fire for the companies that insured the buildings' landlord and the tenant businesses classified the cause of the fire as "undetermined."

Between May 8, 2013 and June 30, 2013, the Michigan Occupational Safety and Health Administration ("MIOSHA") investigated Woelke's death, conducting its "closing conference" with Wayne-Westland Fire Department officials on the latter date. The Fire Chief for the Wayne-Westland Fire Department at the time

3

was Defendant Michael J. Reddy Jr. ("Fire Chief Reddy").[1]  During the meeting between MIOSHA and the city's fire department officials, MIOSHA indicated that it would be issuing citations to the fire department for safety violations resulting in Woelke's death.  On August 30, 2013, MIOSHA issued a citation to the City of Westland for a "serious" violation of health and safety regulations.  The City subsequently acknowledged the citation and agreed to pay the $3,500 penalty assessed against it.

During the Summer of 2013, Michael J. Reddy, Sr. ("Mr. Reddy"), a retired Fire Chief for the City of Westland and father of Fire Chief Reddy, invited Sunday Gains to lunch.  According to the initial complaint Plaintiffs filed in this case, Sunday Gains is the daughter of George and Mary Marvaso and was an employee of Electric Stick.  During their meeting, Mr. Reddy "leaned over and told Ms. Gains 'You know I would do anything to protect my family.'"  (Case No. 18-12442, Second Am. Compl. ECF No. 50 at Pg ID 329, ¶ 35.)

According to Plaintiffs, Mr. Reddy, Fire Chief Reddy, and Fire Marshal Adams had one or more conversations between June 27, 2013 and early September 2013, at which time "they agreed that the best way to deflect attention away from the Westland Fire Department's role in causing the tragic death of firefighter Brian

---

[1] Fire Chief Reddy is currently the Chief of Staff for the City of Westland, Michigan.

4

Woelke would be to conclude that the fire was intentionally set and not the result of an accidental, natural, or undetermined cause." (*Id.* at Pg ID 330, ¶ 37.) Plaintiffs allege that Defendants "agreed and expected that law enforcement would turn their attention toward the plaintiffs as the primary suspects in the case." (*Id.*) Further, "[D]efendants conspired to change the cause [of the May 8, 2013 fire] to 'incendiary' to ward off criticism of the Wayne-Westland Fire Department's leadership's [deficiencies as cited by MIOSHA] that resulted in the tragic loss of a young firefighter's life." (*Id.* ¶ 38.)  Plaintiffs claim that the conspiracy between Defendants "was designed to shift blame away from the fire department's inadequacies and gross negligence, and to shift the focus of a criminal investigation to Plaintiffs." (*Id.* ¶ 46.)

On or about mid-September 2013, Fire Marshal Adams met with Westland City Councilman Bill Johnson.  While Adams previously told Councilman Johnson that the cause of the fire was electrical in nature, he now indicated that he was changing his conclusion to an incendiary cause even though he had no new evidence.  When Councilman Johnson asked Fire Marshal Adams why he was changing his mind, Fire Marshal Adams answered: "Because a firefighter died, Bill."  (*Id.* ¶ 39.)

In mid-November 2013, Fire Marshal Adams submitted an alleged false fire origin and cause report to the Michigan State Police ("MSP") and Wayne County

Prosecutor's Office, which triggered an MSP homicide investigation resulting in the allegedly unlawful search warrants—based on affidavits drafted by Defendant Lt. Richard Sanchez ("Lt. Sanchez")—being executed for Plaintiffs' homes, where records and personal property were seized.  Fire Marshal Adams' announcement that the fire had an incendiary cause, and that the MSP would be opening a homicide investigation into Woelke's death was widely reported in the statewide news media.

## II.   LEGAL STANDARD

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry when evaluating a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255.

### III.   ANALYSIS

Fire Marshal Adams and Fire Chief Reddy, Lt. Sanchez, and Mr. Reddy filed motions for summary judgment based on overlapping facts, arguments, and analysis.  (ECF Nos. 48, 49, and 50.)  As such, the Court will address each motion for summary judgment in the order of filing.

### A.   Fire Marshal Adams and Fire Chief Reddy's Motion for Summary Judgment

In their motion for summary judgment, Fire Marshal Adams and Fire Chief Reddy ("Defendants") seek summary judgment on (1) Plaintiffs' Fourth Amendment claim, (2) Plaintiff's Fourteenth Amendment claim, (3) Plaintiff's Conspiracy claims, and (4) Defendants' affirmative defense that both Defendants

7

are entitled to qualified immunity against Plaintiff's claims.  (ECF No. 48.)

Specifically, Defendants maintain that Plaintiffs "have no evidence to support their

claims against defendants" and "in the absence of any evidence that Defendants

violated any 'clearly established' rights of the Plaintiffs, the Defendants are

protected by qualified immunity from any liability in this case."  (*Id.* at Pg ID 377

¶ 3.).

### 1. *Civil Conspiracy Pursuant to 42 U.S.C. § 1983* [2]

Defendants maintain that Plaintiffs' conspiracy claim—which alleges that

Defendants conspired to report the fire as "incendiary"—cannot survive summary

judgment because it is unsupported by sufficient evidence.  Under § 1983, a civil

conspiracy is "an agreement between two or more persons to injure another by

unlawful action."  *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)

(citing *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)).  To prevail in a civil

conspiracy claim under § 1983, a plaintiff must prove the following: "(1) a 'single

plan' existed, (2) [defendants] 'shared in the general conspiratorial objective' to

deprive [plaintiffs] of [their] constitutional ... rights, and (3) 'an overt act was

---

[2] In the motion for summary judgment, Defendants were unclear as to which form
of conspiracy Plaintiffs were alleging; whether it was under a "statutory civil rights
conspiracy" claim under 42 U.S.C. § 1985 or  "common law conspiracy" under 42
U.S.C. §1983.  (*See* ECF No 48 at Pg ID 402.)  However, Plaintiffs clarify in their
response that they seek only to make a civil conspiracy claim under 42 U.S.C.
§1983. (ECF No. 52 at Pg ID 985.)  As such, the Court will analyze the conspiracy
claims under §1983.

committed in furtherance of the conspiracy that caused injury' to [plaintiffs]."
*Siefert v. Hamilton Cnty.*, 951 F.3d 753, 767–68 (6th Cir. 2020) (quoting *Bazzi*,
658 F.3d at 602). The Sixth Circuit has held that an "[e]xpress agreement among
all the conspirators is not necessary to find the existence of a civil conspiracy. Each
conspirator need not have known all of the details of the illegal plan or all of the
participants involved." *Crowley v. Anderson Cnty., Tenn.*, 783 F. App'x 556, 560
(6th Cir. 2019) (citing *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)).
In such cases, "[a]ll that must be shown is that there was a single plan, that the
alleged coconspirator shared in the general conspiratorial objective, and that an
overt act was committed in furtherance of the conspiracy that caused injury to the
complainant." *Spadafore*, 330 F.3d at 854 (quoting *Hooks v. Hooks*, 771 F.2d 935,
943–44 (6th Cir. 1985)). "It is well-settled that conspiracy claims must be pled
with some degree of specificity and that vague and conclusory allegations
unsupported by material facts will not be sufficient to state such a claim under §
1983." *Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x 986, 988 (6th Cir.
2012) (quoting *Spadafore*, 330 F.3d at 854).

As an initial matter, Plaintiffs concede that they do not have any direct
evidence of a conspiracy. (Case No. 18-12193, Response, ECF No. 52 at Pg ID
989.) However, the Sixth Circuit has held that direct evidence is not necessary to
find the existence of a conspiracy; circumstantial evidence may be sufficient. *See*

*Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000) ("Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, ... circumstantial evidence may provide adequate proof of conspiracy."). However, in such circumstances, a plaintiff must, at a minimum, "still point to some evidence that the defendant in question shared a conspiratorial objective and entered into an agreement with the codefendants who did commit the overt act." *Crowley*, 783 F. App'x at 561.  Plaintiffs offer the following facts to support their claims that Mr. Reddy, Fire Chief Reddy, and Fire Marshal Adams engaged in a conspiracy:

> • [Mr. Reddy] inviting Sunday Gains to lunch three times after the fire, when she had only seen him as a patron at the Marvaso Italian Grille restaurant before the fire.

> • [Mr. Reddy] discussing why the fire department let the young firefighter in the building in the first place (contrary to [Mr. Reddy's] testimony that he never spoke to anyone about the reasons for the firefighter's death). *Id.* at 106-07.

> • [Mr. Reddy's] out-of-the-blue comment to Ms. Gains at the first lunch meeting: "I'll do whatever I have to do to protect my family." *Id.* at 107.

> • The timing of Adams' change of the fire from an electrical fire to an intentionally set fire following the MIOSHA citation and the payment of the fine.

10

- [Fire Chief Reddy's][3] comment to City Councilman, Bill Johnson, that he was changing his report "[b]ecause a firefighter died."

(ECF No. 52 at Pg ID 989.)

First, Defendants maintain that Plaintiffs conceded in depositions that "they have no actual evidence of any conversations among the defendants regarding any conspiracy." (ECF No. 48 at Pg ID 404.) For example, in George Marvaso's deposition, when directly asked if he was aware of any conversations Defendants engaged in regarding his conspiracy claims, Mr. Marvaso answered: "Of those three speaking of deflecting the attention, no." (George Marvaso Dep., ECF No. 48-2 at Pg ID 434.) When questioned about where, if any, conversations about the conspiracy may have taken place, Mr. Marvaso answered: "If they happened, hypothetical. I don't know." (*Id.*) This lack of knowledge of any conversations by Defendants about the alleged conspiracy permeates throughout Plaintiffs' depositions. (*See* Mary Marvaso Dep., ECF No. 48-3 at Pg ID 443; George F. Marvaso Dep., ECF No. 48-4 at Pg ID 466; Sunday Gains Dep., ECF No. 48-5 at Pg ID 475, 448.) The conversations between Defendants alleged by Plaintiffs appears to be merely a hypothesis or a theory absent any proof: direct or circumstantial.

---

[3] Although this statement is alleged to have been made by Fire Marshal Adams, Plaintiff inadvertently attributed this to Fire Chief Reddy in the brief.

11

Next, Defendants maintain that the motive proffered by Plaintiffs for the alleged conspiracy "has no foundation in fact or logic." (ECF No.48 at Pg ID 391.)  In Plaintiffs' Second Amended Complaint, they allege that the rationale behind the alleged "false fire origin and cause report" was "to shift blame away from the fire department's inadequacies and gross negligence, and to shift the focus of a criminal investigation to Plaintiffs." (ECF No. 50 at Pg ID 333, ¶ 45-46.)  However, Plaintiffs concede that this too amounts to their own "speculati[on]" or "opinion."  (Mary Marvaso Dep., ECF No. 48-3 at Pg ID 443; George Marvaso Dep., ECF No. 48-2 at Pg ID 420.)  Moreover, Defendants note that the Wayne-Westland Fire Department announced the results of the investigation *after* the MIOSHA report and citation was issued.  In other words, if the motive of finding that the fire was "incendiary" was to protect the department from liability, then releasing the report after the investigation concluded would not have achieved the alleged goal: liability was already found.

Defendants also address Plaintiffs' additional circumstantial evidence of a conspiracy regarding the lunch conversation with Plaintiff Sunday Gains where Mr. Reddy stated, "I'll do whatever I have to do to protect my family." (Case No. 18-12442, Second Am. Compl. ECF No. 50 at Pg ID 329, ¶ 35.)  The Court acknowledges that someone making a statement such as this would certainly be questionable under many circumstances.  However, this statement appears to have

12

been taken out of context.  As Defendants note, Ms. Gains concedes in her
deposition that Mr. Reddy's phrase "could mean anything" and she "didn't know
what [it] meant," Gaines Dep., ECF No. 48-5 at Pg ID 487, while also stating in
her deposition that she was "suspicious" of the meeting and assumed that Mr.
Reddy was referring to the MIOSHA investigation and the death of the firefighter.
(*Id.* at Pg ID 482, 484.)  Even if it were in relation to the investigation, it does not
provide any evidence that Mr. Reddy planned to collaborate with Fire Chief Reddy
and Fire Marshal Adams to falsify a report.  Such a conclusion from that statement
would be a stretch.

Finally, Defendants maintain that Fire Marshal Adams' discussion with
Councilman Johnson where Fire Marshal Adams conveyed that the fire was "an
electrical ceiling fire" and "not arson," can be explained by the fact that on May 8,
2013, when the meeting took place, the cause of the fire was still being
investigated.  (*See* Johnson Statement., ECF No. 48-19; ECF No. 48 at Pg ID 389.)
And once Fire Marshal Adams issued his final report on October 25, 2013, he
concluded that based on "an extensive evaluation" by electrical engineers, he was
able to "rule out electrical [as] being a source of ignition."  (Adams Dep., ECF No.
48-16 at Pg ID 552.; Adams Rep., ECF No. 48-14 at Pg ID 522.)  In response,
Plaintiffs emphasize that Fire Marshal Adams stated that his reason for changing

the report from an electrical cause for the fire to incendiary was "[b]ecause a

firefighter died." (Johnson Affidavit, ECF No. 52-9.)

Whatever rationale Fire Marshal Adams had for making that statement, it is

inappropriate for this Court to consider it on summary judgment. *See Liberty*

*Lobby*, 477 U.S. at 249 (determining that at the "summary judgment stage the

judge's function is not . . . to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial.") (alterations to

original). However, what is within this Court's authority is to decide the question

presented on summary judgment: whether Plaintiffs provided sufficient evidence

that a reasonable jury could conclude the existence of a conspiracy; they have not.

One of the fundamental aspects of a conspiracy, no matter the form it may take, is

that there must be an agreement or plan "between *two or more* persons." *Bazzi*, 658

F.3d at 602 (emphasis added). Based on a review of the record, Plaintiff has not

provided sufficient evidence to show any involvement in the drafting or

"changing" of the report by Mr. Reddy or Fire Marshal Reddy. Rather, Plaintiffs

attempt to demonstrate a conspiratorial connection by stating that "the three men

had a longstanding relationship," coupled with numerous individual actions. This

is simply not enough. A lack of any direct evidence, coupled with admittedly

vague "opinions" and "speculations" does not amount to a genuine issue of

14

material fact regarding an existence of a conspiracy.[4]  Thus, Plaintiffs do not

provide sufficient evidence to satisfy the first two elements of a conspiracy: that

Defendants devised a "single plan" or that Defendants had a "shared . . .

conspiratorial objective."  *See Siefert*, 951 F.3d at 767.

Finally, despite the alteration of the fire report, which would satisfy part of

the final element of a conspiracy requiring an "overt act," Plaintiffs fail to show

that the action was in "furtherance of the conspiracy" by proving, at a minimum,

that only one person was involved.  *Id.* at 768.  Thus, Plaintiffs fail to allege

sufficient facts to prove *any* element of a conspiracy.

### 2. *Fourth Amendment Claim*

Defendants maintain that Plaintiffs lack any evidence to sustain their claim

of a Fourth Amendment violation.[5]  Specifically, Defendants note that Plaintiffs'

claims are "predicated upon the Michigan State Police having conducted a

supposedly improper search based upon 'fabricated evidence' in the form of

Adams' October 25, 2013, fire report."  The Fourth Amendment safeguards "[t]he

---

[4] Defendants also raise the argument that the "intracorporate conspiracy doctrine" outlined in *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019), applies in this case.  Because the Court has already found insufficient evidence presented by Plaintiffs to reject the notion of a conspiracy, the Court elects not to engage in an additional analysis on this issue.

[5] Because the Court has found there is insufficient evidence that Mr. Reddy or Fire Chief Reddy had any involvement with the drafting of the report or the investigation overall, the Court will focus its analysis of the alleged violations of the Fourth and Fourteenth Amendment solely on Fire Marshal Adams.

right of the people to be secure in their persons … against unreasonable searches and seizures."  U.S. Const. amend. IV.  "One of the touchstones of the reasonableness requirement is that the police must generally obtain a warrant based upon a judicial determination of probable cause before entering the home." *Ziegler v. Aukerman*, 512 F.3d 777, 785 (6th Cir. 2008).  A party may be held liable for a violation of the Fourth Amendment for "the intentional fabrication of a forensic report[s]" as they would for "the intentional fabrication of a police officer or prosecutors[s]" report.  *Gregory v. City of Louisville*, 444 F.3d 725, 740 (6th Cir. 2006).  "A Fourth Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure." *Caminata v. Cnty. of Wexford*, 664 F. App'x 496, 500 (6th Cir. 2016) (quoting *Robertson v. Lucas*, 753 F.3d 606, 616 n.5 (6th Cir. 2014)).

Plaintiffs' proffer the following evidence in support of their claims regarding violations of the Fourth Amendment:

> A. [Fire Marshal Adams'] fabrication of evidence, namely filing a false fire origin and cause report claiming the Electric Stick fire was incendiary in nature when [Fire Marshal Adams] knew such a conclusion was false and, in fact, contrived;
>
> B. [Fire Marshal Adams, Fire Chief Reddy, and Mr. Reddy] conspiring to change the conclusion of the cause of the fire being incendiary in nature, in order to deflect media attention away from the WWFD's inadequacies and to have the Michigan State Police

16

actively investigate Plaintiffs, the owners of the
Electric Stick and Italian Grille restaurant;

C.  Other acts and violations that will be discovered during
the course of the lawsuit.

(Case No. 18-12442, ECF No. 50 at Pg ID 336-37.)  Because the Court already

found that there is insufficient evidence of a conspiracy, and because Plaintiffs do

not appear to plead or argue "other acts and violations" outside of further

discussions of facts already contained within the Second Amended Complaint, the

Court will focus its analysis on the "fabrication of evidence" claim against Fire

Marshal Adams.

Defendants maintain that Plaintiffs have no basis for their claim relying on

*Caminata*.  *See* 664 F. App'x 496 (6th Cir. 2016).  *Caminata* involved allegations

that a fire investigator fabricated evidence for the Michigan State Police, which

included a manipulation of the scene of the fire.  *Id.* at 498.  There, the court

analyzed both the "fabrication of evidence" and the plaintiff's "malicious

prosecution" claims together.  The court found that the plaintiff failed to show that

the investigator "acted intentionally or recklessly in his investigation."  *Id.* at 501.

However, this Court notes that while "recklessly" is the standard in a malicious

prosecution case, the question for a fabrication of evidence claim is whether the

defendant acted "knowingly."  *See Caminata*, 664 F. App'x at 500; *Ferris v. City*

*of Cadillac, Mich.*, 726 F. App'x 473, 478 (6th Cir. 2018).  Outside of the criminal

17

context, 'knowingly' is defined as acting "[i]n such a manner that the actor engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result; deliberately." *Knowingly*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Despite the seemingly thorough investigation of all parties involved, Adams' statement to Councilman Johnson about why he changed the report does raise reasonable, and unanswered questions as to his meaning. Whether Fire Marshal Adams knowingly fabricated the report, even in part, is a question of material fact that is proper for a jury to determine, while weighing the evidence and making any credibility determinations. As such, an issue of material fact exists as to whether Fire Marshal Adams violated Plaintiffs' Fourth Amendment Rights.

### 3.  *Fourteenth Amendment Claim*

Defendants maintain that Plaintiffs lack evidence of a violation of the Fourteenth Amendment. The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The purpose of the Due Process Clause is to place restrictions on government actions by "prevent[ing] [the] government from abusing its power, or employing it as an instrument of oppression." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992) (citations omitted); *see also City of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) ("[t]he touchstone of due

process is protection of the individual against arbitrary action of government,"
including "the exercise of power without any reasonable justification in the service
of a legitimate government objective.").

The Due Process Clause is separated into two components: procedural and
substantive due process.  *See Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014).
"Substantive due process is '[t]he doctrine that governmental deprivations of life,
liberty or property are subject to limitations regardless of the adequacy of the
procedures employed.' " *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014)
(alteration in original) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211,
1216 (6th Cir. 1992)).  Courts have found violations of substantive due process
when the challenged action was "'willful and unreasoning,' 'shock[ed] the
conscience,' was 'extreme[ly] irrational[ ],' or lack[ed] 'some factual basis.'"
*Johnson v. City of Saginaw, Michigan*, 980 F.3d 497, 513 (6th Cir. 2020) (quoting
*Johnson v. Morales*, 946 F.3d 911, 937 n.4 (6th Cir. 2020)).  Moreover,
Substantive due process protects "[t]he right not to be subject to 'arbitrary or
capricious' action by a state either by legislative or administrative action."  *Id.*
(quoting *City of Grand Blanc*, 961 F.2d at 1217.)  "Proving a violation of
substantive due process requires not only that the challenged state action was
arbitrary and capricious, but also that the plaintiff has a constitutionally protected

19

property or liberty interest." *Andreano v. City of Westlake*, 136 F. App'x 865, 870–71 (6th Cir. 2005).

When determining whether the government's actions are 'arbitrary and capricious,' the Sixth Circuit concluded that "the 'arbitrary and capricious' standard is simply another formulation of, but is no less stringent than, the more traditional 'shocks the conscience' standard." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003). "Conduct shocks the conscience if it violates the decencies of civilized conduct." *Range*, 763 F.3d at 589 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Here, this Court has already determined that Plaintiffs have a constitutionally protected right to be free from a knowing fabrication of evidence. (*See* Case No.18-12442, Opinion and Order, ECF No. 34 at Pg ID 288 (*citing Mills v. Barnard*, 869 F.3d 473, 486 (6th Cir. 2017).) Thus, the only issue that remains is whether the alleged fabrication of evidence—or the fire report being changed to an "incendiary" cause—can reasonably be considered arbitrary and capricious. The Supreme Court notes that this is a high bar to meet as "only the most *egregious* official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 846 (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)) (emphasis added). Whether Fire Marshal Adams' conduct is egregious remains an open question. Again, despite the fact that Fire Marshal

20

Adams' provided evidence regarding the investigation of the fire, there still

remains the question of whether the investigation, including its conclusion, was

tainted by his personal biases, which would make the report itself fraudulent. *See*

*c.f. Corbo Properties, Ltd v. Seneca Ins. Co.*, 771 F. Supp. 2d 877, 888 (N.D. Ohio

2011) (noting that the lack of evidence that the report was fraudulent or "otherwise

unreliable" factored into the court's conclusion that it was reasonable for

defendants to conclude the fire was incendiary).  Because Fire Marshal Adams'

rationale for changing the report remains a genuine issue of material fact, a

reasonable jury could find that his conclusion that the cause of the fire was

"incendiary," prompting an investigation and subsequent search and seizure, was

egregious and thus, arbitrary and capricious.

### 4. *Qualified Immunity as to Alleged Constitutional Violations*

In response to the constitutional violations alleged by Plaintiffs, Defendants

maintain that Fire Marshal Adams and Fire Chief Reddy are protected by qualified

immunity.  Because the constitutional violations analysis focused solely on Fire

Marshal Adams, the qualified immunity analysis will proceed likewise.  Qualified

immunity shields government officials acting within the scope of their official

duties from civil liability insofar as their conduct does not violate clearly

established rights of which a reasonable person would have known.  *See Harlow v.*

*Fitzgerald*, 457 U.S. 800, 817–18 (1982).  A two-step inquiry is used to decide

whether an officer is entitled to qualified immunity.  *See Saucier v. Katz,* 533 U.S. 194, 201–02 (2001).   First, taken in the light most favorable to the plaintiff, the court must decide whether the facts alleged show that the officer's conduct violated a constitutional right.  *Id.* at 201.  Second, if the facts do show the violation of a constitutional right, the court must determine whether the right was clearly established.  *Id.*  "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity."  *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).  The relevant and "dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Biggs*, 475 U.S. 335, 341 (1986).

Again, Plaintiffs' right to be free from a knowing fabrication of evidence was clearly established in 2013 when the alleged violation occurred.  *See Marvaso v. Sanchez*, 971 F.3d 599, 608 (6th Cir. 2020) ("Moreover, as the district court found, it was certainly clearly established at the time of Plaintiffs' constitutional injury that the 'knowing fabrication of evidence violates constitutional rights.'").  Plaintiffs have presented sufficient evidence that Fire Marshal Adams was aware that his action was unlawful, which occurred when he allegedly responded to Councilman Johnson with his reasoning for changing the report.  A reasonable

fireman, officer, or anyone with the requisite training, is aware that engaging in such conduct would be unlawful and at the very least, would likely amount to a termination of employment.  As such, absent any evidence on the record to rebut that statement, Fire Marshal Adams is not entitled to the protections of qualified immunity.

Because issues of material fact exist regarding Fire Marshal Adams' alleged violations of Plaintiffs' Fourth and Fourteenth Amendment rights, the Court is granting in part and denying in part the motion for summary judgment.

### B.  Lt. Sanchez's Motion for Summary Judgment

As an initial matter, Lt. Sanchez previously filed a motion to dismiss based on a qualified immunity argument (ECF No. 7), which the Court denied on the grounds that "he d[id] not address the impact of his alleged false statements and omissions on the finding of probable cause," and as such, the Court was unable to conclude whether he was entitled to qualified immunity. (ECF No. 18 at Pg ID 241.)  The Court further opined that pursuant to Sixth Circuit case law, it is generally inappropriate to grant a 12(b)(6) motion to dismiss based on qualified immunity.  (*Id.* (citing *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015).)  Lt. Sanchez now seeks summary judgment maintaining that he is entitled to qualified immunity because "Plaintiffs have failed to make a substantial showing of falsity/reckless disregard for the truth" in response to allegations that Lt. Sanchez

23

obtained search warrants through an affidavit that made materially false statements
or omitted material facts.  (ECF No. 49 at Pg ID 668; ECF No. 1 at Pg ID 12-13.)

Although officers are entitled to rely on judicially-secured warrants as
satisfactory evidence of probable cause, *see Yancey v. Carroll Cnty., Ky.*, 876 F.2d
1238, 1243 (6th Cir. 1989), "an officer cannot rely on a judicial determination of
probable cause if that officer knowingly makes false statements and omissions to
the judge such that but for these falsities the judge would not have issued the
warrant." *Id.*; *see also Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999); *Hill v.
McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).  Stated differently, "police officers
cannot, in good faith, rely on a judicial determination of probable cause when that
determination was premised on an officer's own material misrepresentations to the
court." *Wesley*, 779 F.3d at 433 (quoting *Gregory v. City of Louisville*, 444 F.3d
725, 758 (6th Cir. 2006)) (additional citations omitted).

In support of his motion for summary judgment, Lt. Sanchez maintains that
he based his probable cause, and the subsequent affidavits to obtain search
warrants, on the following:

(1) multiple tips that the fire was intentionally set,
(2) a vehicle in the parking lot of the business after hours on the night
    of the fire that matched a description of Marvaso, Jr.'s car,
(3) information from a Marvaso relative that Marvaso, Sr. was
    distraught because the fire was an insurance job and no one was
    supposed to get hurt,
(4) a recent fire cause and origin report from Westland determining
    that the fire was intentionally set,

24

(5) information that the entry doors were locked and not disturbed,

(6) the inference that no forced entry suggested an inside job,

(7) information about financial difficulties associated with the business,

(8) information that Plaintiffs removed items from the scene of the fire,

(9) information regarding business related items that may be located at Plaintiffs' residences and storage lockers,

(10) information about telephone numbers associated with the business,

(11) information about the role of each Plaintiff in the business, and

(12) information that the insurance coverage was recently raised.

(ECF No. 49 at Pg ID 666.)  Thus, Lt. Sanchez asserts that "a reasonably prudent and careful investigator could well have concluded that there was probable cause to suspect a crime and to seek the search warrants that were obtained." (*Id.*)  The Court agrees.  There is ample evidence on this record including depositions of all Plaintiffs, sworn statements, and Fire Marshal Adams' report to presume a likelihood of arson, which satisfies the requisite probable cause for a warrant.

More importantly, Lt. Sanchez also maintains that despite Plaintiffs' allegations that he made materially false statements and that he omitted material information in his affidavit, there is evidence in the record that contradicts these assertions.  For example,[6] George Marvaso admitted that he did not know whether the fire was arson (*see* George Marvaso Dep., ECF No 49-8 at Pg ID 802), admitted that he was unaware as to the information Lt. Sanchez received from

---

[6] Lt. Sanchez also points to additional deposition testimony in support of his argument, which includes testimony from everyone listed as a party to this suit.

other officers (*Id.* at Pg ID 807), admitted that the fire reports were a part of the investigations that Lt. Sanchez relied upon in drafting the affidavits (*Id.* at Pg ID 809), admitted that his business did attempt to increase its insurance policy before the fire (*Id.* at Pg ID 810), and that he and Mary Marvaso may have retained "some" business records and phones at their home.  (*Id.* at Pg ID 812-13.)  Further, in Mary Marvaso's deposition, she admitted to specifically seeking to increase the insurance on the businesses from $400,000 to $600,000 before the fire (Mary Marvaso Dep., ECF No. 49-9 at Pg ID 818), was uncertain as to the cause of the fire. (*Id.* at Pg ID 819-21), and also did not recall having any conversations with Lt. Sanchez outside of when he came to the house during the search, noting that "he didn't say much."  (*Id.* at Pg ID 822-24.)

In their Response, Plaintiffs offer the following information that they claim Lt. Sanchez had in his possession but "was not presented" in support of the affidavit and subsequent warrant:

    a. The reports of at least one fire investigator representing insurance companies for the insured entities (restaurant and billiards hall) and the owner of the mall that housed the damaged properties. The reports indicated that the classification of the fire was "undetermined," meaning there could be no determination that a crime had occurred. (J. Terski Report, 6-27-13, Exhibit 10).

    b. Information from George Marvaso that the business was doing great financially because of the revenue generated from charity poker. (G. Marvaso Affidavit, 12-13-18 ¶ 4, Exhibit 11).

    c.  Information from George Marvaso that he was renovating and improving the interior of the facilities because of the increased revenue. *Id*.

    d.  Documentary proof of improvements made to the property. (Exhibit 12).

    e.  Documentary proof of increased revenues for the period 2010-2013. (Exhibit 13).

    f.  Information from George Marvaso to Sanchez that the Marvasos were making their last payment to the City of Westland on overdue taxes at the time of the fire. (George Marvaso Affidavit, 7-13-22, ¶ 1(c), Exhibit 14).

    g.  Information that Robert Mulka, George Marvaso's former son-in-law, had not seen or talked to the Marvasos in years following his divorce from the Marvasos' daughter, Sunday Gaines. (R. Mulka Affidavit, ¶ 5, Exhibit 15).

(ECF No. 56 at Pg ID 1560.)  However, even in viewing the facts in the light most favorable to Plaintiffs, nothing they raise as omitted material information can reasonably be considered *material* to an affidavit for a search warrant.  They amount to nothing more than additional or irrelevant facts that would not have altered or negated the probable cause already found.  Further, as Lt. Sanchez accurately points out, the majority of the affidavits remain undisputed (ECF No. 61 at Pg ID 1794), so to allege that Lt. Sanchez's affidavits were "fraught with material misrepresentations" is in itself a contradiction. (ECF No. 56 at Pg ID 1566.)

The Court finds that no genuine issue of material fact exists as to whether Lt. Sanchez (1) had the requisite probable cause when drafting the affidavits, which he did, or (2) whether Lt. Sanchez made any material misrepresentations or omitted any material information, which he did not. Plaintiffs have failed to proffer sufficient evidence to prove otherwise. As such, Lt. Sanchez is entitled to qualified immunity as he was not in violation of any law. *See Harlow*, 457 U.S. at 818 ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

## C.  Mr. Reddy's Motion for Summary Judgment

The Court has already found that Plaintiffs failed to provide sufficient evidence that Mr. Reddy drafted the alleged false fire report or engaged in any substantive conversations with Fire Chief Reddy or Fire Marshal Adams, and as such, there was no genuine dispute of material fact that Mr. Reddy was involved in a conspiracy. *See supra* Section III.A.1. Further, because of Mr. Reddy's lack of involvement, it is clear that he cannot be held liable for any of the constitutional claims alleged by Plaintiffs. Because those are the only claims alleged against Mr. Reddy and no claims remain, the Court is granting Mr. Reddy's motion for summary judgment.

28

## IV.  CONCLUSION

For the reasons stated, Plaintiffs argument that Fire Marshal Adams, Fire Chief Reddy, and Mr. Reddy engaged in a conspiracy to file a false fire report fails as a matter of law because there is insufficient evidence on the record to demonstrate that either Fire Chief Reddy or Mr. Reddy had any involvement with the drafting or "changing" of the fire report, and  Plaintiffs failed to present sufficient evidence that they agreed to engage in a conspiracy outside of Plaintiff's admitted "opinions" and "speculations."  Provided that Fire Marshal Adams would remain the sole "conspirator" left under this claim, the conspiracy is not possible under the law.  *See Bazzi*, 658 F.3d at 602 (conspiracy requires "two or more persons").  However, regarding the alleged violations of Plaintiff's Fourth and Fourteenth Amendment rights asserted against Fire Marshal Adams involving his filing of a false fire report, there are genuine issues of material fact as to his statements discussing his purported reason for changing the fire report, which will be left to a jury to determine.  And because Plaintiff's right to be free from a knowing fabrication of evidence was clearly established, and Fire Chief Adams reasonably knew that falsifying a report is unlawful, he is not entitled to qualified immunity.

Next, Plaintiffs' arguments that Lt. Sanchez should not be granted qualified immunity fails because they lack sufficient evidence to demonstrate that he did not

have the requisite probable cause to seek a warrant, or that Lt. Sanchez proffered materially false information to the magistrate judge in support for the underlying affidavit.

Finally, because Plaintiffs presented insufficient evidence that Mr. Reddy was involved in a conspiracy or that he had any involvement in the investigation of the fire or the resulting report, no issue of material fact exists regarding the claims alleged against him.

Accordingly,

**IT IS ORDERED** that John Adams' and Michael J. Reddy, Jr.'s motion for summary judgment (ECF No. 48) is **GRANTED IN PART** as to the claims against Michael J. Reddy, Jr. and **DENIED IN PART** as to the claims against John Adams.  The Fourth and Fourteenth Amendment claims may proceed with litigation against John Adams.

**IT IS FURTHER ORDERED** that both Richard Sanchez's motion for summary judgment (ECF No. 49) and Michael J. Reddy, Sr.'s motion for summary judgment (ECF No. 50) are **GRANTED.**

**SO ORDERED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: March 24, 2023

30